Our next case for this morning is Dupuy Synthes Sales, Inc. v. Orthola, Inc. Mr. Haller. Good morning. We've reserved four minutes for rebuttal. You just watched the time. May it please the Court, as the Court is keenly aware, the abstention doctrine is an extraordinary and narrow exception to the exercise or postponement of jurisdiction to occur only with the clearest of justifications in exceptional circumstances where the order to repair to the state court would clearly serve an important and necessary purpose. And a district court's unflagging duty to exercise jurisdiction is at its zenith, whereas here the case involves federal law and federal policy to give effect to a delegation clause in an arbitration agreement. What do you say to the repeated reminders from the Supreme Court that the state courts are equally able to apply federal law, including federal laws such as the Federal Arbitration Act, number one, and the fact that actually in Colorado River itself, after chatting on about how important it is for federal courts to exercise their jurisdiction and giving giant lists of nine or ten factors, the Supreme Court turned around and said, oh, but in this case the district court should stay its proceedings in favor of the state court proceedings. In that instance, it happened to be a fairly elaborate system of state law on water rights. So the court, even in the very foundational case, didn't say that the number of times for this kind of abstention is never. It's sometimes. And it's unclear to me why the district court abused its discretion when the very issue, should this be arbitrated, is before the California courts. Well, with respect to the issue of concurrent jurisdiction, though, in Moses Cone the Supreme Court clearly said that federal law must be a major consideration weighing against abstention in those circumstances. But not necessarily. Once the Supreme Court has, I'm sorry, once the state court has decided the issue, it's on appeal in the state court system, if the state courts get things wrong when all is said and done, there's always a petition for writ of certiorari to the Supreme Court, and the Supreme Court has granted certain FAA cases out of state courts. There's a process. Well, I think it's very important, because I didn't quite get that, is that the court has to distinguish between the SRA petition on the one hand and the CIA petition on the other hand. The district court was not persuaded that that distinction made any difference for this purpose. Well, I submit that that is error. There's an arbitration clause in both of them, right? Well, there is an arbitration. The arbitration clauses are different. A little tiny bit different. And the issue is delegation. The issue before the district court was the obligation, which is almost absolute. The Supreme Court in Henry Schein said that a court cannot fail to enforce a delegation provision, even if it considers that it's wholly groundless. Well, but... Go on. Judge Ruffin has a question. Hello, Judge Ruffin. I'd like to follow Judge Wood's question to you, because, you know, we found that cases are parallel, even where the federal cases included additional parties, additional claims, requests for different types of relief. When there was, nevertheless, a substantial likelihood that the state litigation would dispose of all claims present in the federal case. And here, wouldn't the California court's determination that the arbitration clauses were unconscionable and couldn't be enforced dispose of all of the claims before the district court? Well, I think you've hit the nail on the head, but the answer is no, because the analysis has... Why? It would go to arbitration. If the California Court of Appeal thinks that these arbitration clauses should be enforced, then that's what it'll say. Off you'll go to commercial arbitration for the AAA, and everybody will be happy. But the issue of parallelism, I submit, must be analyzed with respect to the underlying claims. No. This is a matter focusing on who is going to decide. That's the issue right now. We are not deciding the merits of this case. That will be decided once the proper forum is established. But if I can give an example, if instead of the SRA petition, we were here talking about a claim made by Dupuis and Theis under Section 6C of the Sales Representative Agreement, which gives it the right to recoup overpayments of commissions, and we had filed that case in arbitration, I submit nobody would be arguing reasonably that that's a parallel proceeding. We would not. If that were the case and you had arbitrated that, the only way you would be here would be on a petition for recognition and enforcement of the arbitral award, and we have thousands of cases that say we don't second-guess arbitrators. Whatever the arbitrator decided, aside from tiny exceptions, is what exists. It's not a comparable situation at all. In AAR International, this court found that a case brought in the U.S. by a litigant where there were three cases going on in Greece under the same contract was not parallel because the claims made, even though they were under the same contract, were distinct and independent. The claim that we're making under the Sales Representative Agreement is independent of anything that is before the state court. It doesn't have anything to do with whether the 14.1 agreement to submit to arbitration any controversy or claim arising out of or relating to this agreement falls within the scope of the arbitral clause. I know your whole brief does what you're doing right now. Your entire brief pushes over to the underlying merits of the claim, but I'm not at all convinced that that's where we are now. It seems to me we're deciding, is this for an arbitrator or not? That was the petition before the district court. And that's the issue you raised as to both of the contracts before the state court in the motion to compel. Well, we raised the issue that with respect to the claim under the CIA, which is the only claim pending against a few syntheses. But you moved under both. Well, because Count 7 has a declaration that incorporates certain aspects. So I do agree that we did say to the court that both agreements require arbitration, but the issue that was joined was the claim that the whole agreement, the arbitration provision, was unconscionable by virtue of provisions external to the arbitration agreement, which we argued was contrary. That argument was contrary to Supreme Court authority. And you may be right, but the California courts are deciding that. The issue that we've presented to the district court is really a different issue because the delegation provision stands alone, is severable under the Supreme Court's decision. How is that different from the motion to compel arbitration? That's different because the issue of delegation was not properly addressed, not adequately addressed by the state court. And it's a threshold issue because the state court, under federal law, had no power to issue its decision. But we have the right. I don't understand that at all. Are you saying state courts don't have authority to apply the FAA? No, I'm not saying that. That would be a shocking proposition. In fact, they're bound by the FAA. The case law has said that. That's not what I'm saying. What I'm saying with respect is that where there's a delegation provision, that must be given effect, and therefore a court, neither a district court nor a state court, has authority to decide issues with respect to validity and those threshold issues. That must go to the arbitrator. And that's the law of the— But the Supreme Court has looked at the question of the distinction between giving the arbitrator the responsibility to decide the basic, let's say, commercial dispute, and also giving the arbitrator what would sometimes be called in international circles competence-competence. Can the arbitrator decide whether that arbitrator has jurisdiction and so forth? And the Supreme Court said in first options, that's fine too, but you need to make a strong showing that that's what the parties did. So you do need to go back and look at the underlying agreement to arbitrate. Arbitration is a creature of agreements, and I think that's the only thing the court was doing. It wasn't saying that it was going to decide arbitrability or arbitrator jurisdiction. It wanted to make sure there was an agreement that gave the competence-competence authority to the arbitrator. And once that happens, then things go one way or the other. But that's why it was essential for the district court to exercise jurisdiction to analyze that issue. No, why—you don't trust state courts. I mean, that's basically what this—if this were—if the California courts had finished, and then you had filed this case in federal court, you would have been barred by Rooker-Feldman. California courts didn't finish, so this is not a Rooker-Feldman case, but it's the same principle. Well, I respectfully disagree because the decision of the state court is not raised due to Carter. We've cited to the court the Fifth Circuit analysis in Apton. This is on all fours with our argument here, and we would submit that that's the analysis the court should adopt. Why did you wait five months to bring this lawsuit, if that's your concern? It seemed—and the district court focused on this in looking at the vexatious and contrived nature. It seemed that you waited for a ruling from the Supreme Court on the—not the Supreme Court, from the California court before they appealed to the California Supreme Court on the issue of motion to compel arbitration, rather than immediately, if you were concerned about the delegation provision, immediately filing the lawsuits in Indiana. Why did you wait five months? Well, we would always have filed the SRA petition regardless. So the concept— But you waited five months. Why didn't you bring it? But there's no reason we had to file the SRA petition earlier. That relates to a right, a contractual right that we have. But if you're concerned about what's going on in the California courts, and you're concerned about this delegation provision, and you yourself, when you filed the motion to compel, raised both of the agreements, it might be different if you hadn't raised the SRA in your motion to compel. So you were concerned about that. Why didn't you bring it right away? Well, because we're not obligated to. I'm not saying you're obligated to, but from a strategic standpoint, it seems to me like you waited to see if you got a favorable ruling. Because the simpler approach, rather than start two separate proceedings, is to ask the state court in the first instance to rule on the arbitrability issue. That may be the more simple approach, but that's a strategic decision, and then you run into the risk of Colorado River. No, because Colorado River is not a forfeiture of right provision. It's not—the state court is not the exclusive remedy. We have the right to vindicate our federal rights, and where the right is— But not necessarily in federal court. But I submit where the right is so acute where it goes to a delegation provision that was not recognized by the state court. Okay, I think we do have this point that you're making, so if you'd like to save the balance of your time for rebuttal, I advise you to do that. Okay, thank you. Thank you. Mr. Juhlander. Good morning, and may it please the court. I think we focused on exactly the right issues this morning. Can I just ask you, it's my understanding that in the California Court of Appeal, briefing is just about finished on this appeal, but the court has not yet set an oral argument date. That's correct. Appeals ask for a 30-day extension on their reply brief. That extension, I believe, expires on February 6th. The briefing will be finalized, and we would have a hearing shortly thereafter. So is that the court's normal practice once briefing is complete? In other words, are we looking at a matter of months before the court hears argument, a matter of years? Oh, no. I know you're only guessing, but you must know. Yeah, it is speculation. I've been up with the Court of Appeal several times, and they're very diligent. They are very busy, I would expect, a matter of months before we will have a hearing, oral argument on the appeal. Does that court grant oral argument in every case or only when it thinks it would be helpful? Yes, yes, in every case. Every case. It's offered, yes, exactly. And I think the salient issue here is that DePue selected that forum. DePue selected the Superior Court as the place to raise the issue of arbitrability. Can you explain the procedure this is referred to in the briefs under this part of the California Code of Civil Procedure 1281.4? Absolutely. In fact, that's exactly what points out the intentionalness of what DePue has done here. Under California law, Code of Civil Procedure Section 1281.4, if DePue had filed the federal petitions that it has done in Indiana first, the stay that DePue is asking for would have been mandatory. Before the filing of the motion to compel. Correct, exactly. So your filing of the lawsuit in the first instance isn't what triggered that. It would be the filing of the motion to compel. Precisely. If all DePue had to do is rather. . . And any federal court, in other words. It wouldn't have had to be in the Central District of California or anywhere else in particular. Of course. The statute is really broad in that respect. It talks about any proceeding to compel arbitration. So whether it's a proceeding in state court, whether it's a proceeding in federal court, it would invoke the automatic or mandatory stay of Section 1281.4. And so, again, that really points out the intent of DePue to wait and look and see. But the court's decision was going to be in California. It didn't like the decision. The winds were blowing its wrong direction. Or, in California, we might say the waves weren't breaking his way. And so DePue made a choice at that juncture, now having actually shopped in the forum and bought the merchandise to go look for another forum in Indiana. So of what significance, if any, is it that the district court, looking at the Colorado River potential, consciously decides that she's not going to dismiss on Colorado River grounds. She just stays on Colorado River grounds, which I interpret to mean that depending on what happens in California, the parties would be free to go back to the district court in southern Indiana. That's exactly right, Your Honor. And I think she was trying to follow this court's precedent in making that decision to stay as opposed to dismiss. And it's exactly the situation I believe that we've already discussed here today. And that is, if the California court continues to agree with Mr. Carvarno, then the matter is going to be resolved as a matter of issue of preclusion. There's nothing further for the court in Indiana to do on the subject of arbitrability. If the court in California disagrees with Mr. Carvarno and the arbitrability issue is thrown back, well, now we're arbitrating in Indiana. We don't need the petition in Indiana to tell us that. That will have been resolved completely without any question. You know, we have found cases parallel where the overlap in claims is not complete. But here, is there any overlap at all in the underlying substance of claims as to the SRA for which arbitration is sought? Yeah, that's a really important issue, Your Honor, because there's complete overlap. The parallel issues here are 100%. DePue has made a strident effort to assert that the claims that are existing in Indiana have never been before the California court. Well, those claims have never been before the district court either. There is only one claim before the district court, and that is to compel arbitration. That's it. That's the only claim. And that claim is completely identical with the claim that's before the courts in California. And so the idea that there is not a parallel issue here is really it's just not correct. We have complete parallel issue, and the only issue now is when we examine these factors, Colorado asked this court to examine and asked the district court to examine, where do we find ourselves? And we say, well, there was two bites at the apple. In looking at those factors, one of the factors is inconvenience of the forum. Both of the contracts at issue here have a forum selection clause, which provides bringing it in Indiana. Haven't you waived your right to argue Indiana is an inconvenient forum given that? I know the district court on that particular factor found in your favor, but it seems that the forum selection clause would trump that. So if we're talking about a forum nonconvenience analysis, then we would get into the whole issue of enforceability of the forum selection clause. But that is not the role of Colorado River analysis. Correct. It's separate. It's just it's the inconvenience of being there. But aren't you implicitly acknowledging it's not that inconvenient when you have a forum selection clause in your contracts? And, Your Honor, I think that's why the district court found it slightly favored abstention, but it didn't carry the day. I think the district court found that, indeed, there was an inconvenience to the parties and not just to Mr. Carvarno and his parties, but all of the people are in California as well. That issue was was left unrebutted by DePuy. The district court found and therefore it favored abstention. It wasn't the most significant factor that the district court found, but it was a factor in favor of. Yes, absolutely. And then there is the issue of multiple litigations here. DePuy has over and over again talked about how important judicial efficiency it is. We're trying to bring this all in one court, all in one place, in AAA and DePuy's opinion. Specifically, the idea of desirability of piecemeal litigation, that factor relates to instances in which you have a party that can't be compelled to arbitration. In H. Moses Cone is an example of that, where there was a party that was not subject. The hospital, the architect, right? Yeah, exactly, that was not subject to arbitration. And essentially Colorado River says, look, that's going to happen. That's fine. But in our case, we don't have that circumstance. We have all parties that are concerned are focused on the arbitrability issue. They're all subject to the arbitration issue. And what DePuy has done is they've tried to create a distinction without a difference in that respect. Can I go back for just one second to the form selection clause? I was a little worried about that, too. But in the end, what the district court says is, as such, the court finds that this factor favors abstention, albeit insignificantly. So I would assume by saying insignificantly, she's saying it's really not material one way or the other. Yeah, it's not going to carry the day. We acknowledge the form selection clause. We acknowledge that that would be an issue we would have to confront head on in terms of a motion for a form. If we were talking about a motion for form of nonconvenience, we're not. Well, that could be filed. Does California recognize the form of nonconvenience doctrine? Oh, yes, absolutely. So a motion could be filed in a California state court asking for dismissal in favor of the selected forum? Presumably. If, for some reason, you were beyond arbitration, which is a whole different question. Yes, absolutely. I really anticipate that all of these issues are being argued in California before courts that deal with these issues every day. As this court has pointed out, with concurrent jurisdiction, California courts are bound by the FAA. They deal with the FAA every day. I would like to address really briefly and quickly this idea of the delegation clause. DePue relies on that a lot. And we've pointed this out in our brief, and I won't belabor this. But in the initial motion to compel arbitration, DePue did not raise the issue of the delegation clause. And they have spent a lot of time before this court saying, well, gee, that's why we're in Indiana, et cetera. Did they raise it for the first time before the Court of Appeals? Yes. Yes, they did, Your Honor. The California Court of Appeals. Correct. And in our response to the California Court of Appeals, of course, we've argued waiver that that issue was waived because it wasn't argued or raised to the trial court. Again, that's a classic issue of having a second bite at the apple. DePue is seeking to have now another court weigh in on this issue. And I think the idea that this was supposed to be something that my client was supposed to have raised has been put to bed since 1960 in the United States Supreme Court's opinion. And we've cited this opinion in our brief, but we haven't quoted from it. It's United Steelworkers of America v. Warriors and Gulf Navigation Company. The Supreme Court in 1960 said that the question of arbitrability is for the courts to decide, with the site, where the assertion by the claimant is that the parties excluded from the court determination, not merely the decision of the merits of the grievance, but also the question of its arbitrability, vesting power to make both decisions in the arbitrator. The claimant, in this case DePue, must bear the burden of a clear demonstration of that purpose. Well, that's right. You can have. It's permissible. First Options of Chicago says exactly the same thing. Justice Breyer wrote the opinion. These kinds of clauses are possible, what they're calling a delegation clause, but the court calls for a strong showing that that's what the parties intended to do. Precisely, and in California we have no showing, and that's the problem, and that's an issue that will be dealt with on the level in California. And presumably, you know, that issue will come down as having been precluded as fully litigated between the parties, and we will be there. We will arrive at that issue. The fundamental thing that's happening right here, this isn't a David and Goliath situation. This is more like a War of the Worlds situation. I don't know how nerdy any of you might be, Your Honors, but in the War of the Worlds, you know, this was a massive assault that was defeated by a small virus. And in our case, Mr. Covarno is more akin to that virus than he is to even the David. This is a massive assault by a billion-dollar corporation. And what's happening here is we have a billion dollars, billions of dollars behind multiple efforts at litigation. And I think one of the underlying themes of the Colorado River Doctrine is that you can't buy manipulation of the courts. That's what my client is seeking through this process. But I will say that, you know, when Mr. Holler argues that the Supreme Court has sent the message that Colorado River abstention should be sparingly used, you know, courts are supposed to decide cases that fall within their jurisdiction, he's exactly correct. The court has said that. This court has said the same thing. So you need a pretty strong showing that this sort of stepping back from the case, I'll call it abstention, even though some people think it's not one of the abstention doctrines, but, you know, the wise judicial administration doctrine is something to be used carefully. And I don't know what signal we have from the district court that that proposition was recognized. Well, we wouldn't obviously disagree with that proposition. It's a well-established proposition. Interestingly, DePue has not cited even one single case in which a motion to compel was brought in a state court and lost, and then a federal petition was filed where the Colorado River Doctrine allowed that, you know, disagreed with an abstention ruling from the district court. Sort of a parallel effort, almost an effort to get federal review of the state trial court. Precisely. This court has seen that exact fact circumstance in the SGMA case. In the SGMA case, we had exactly the same situation where we were dealing with a motion to compel. This is SGMA Health Care of St. Louis v. Kaiser where you had a class action situation, and, again, the state court, the issue was presented before the state court. After that happened, then the petition was brought in the United States District Court for Illinois. When the district court abstained, it abstained precisely on the same grounds that we've been talking about today, that it's substantially the same issue. It's the issue of arbitrability. In fact, the court said substantially the same issue, whether the provider should be compelled to arbitrate their disputes with SGMA, is being litigated in both federal and state forms. This court affirmed that decision as modified. And I take it this is, I mean, we haven't talked too much about standard of review, abusive discretion review, de novo review? Yeah, in fact, your Honor. What's your position? Our position on that, the standard review that was laid out in the Aptom Court v. McCall case, which is a Fifth Circuit case, but I thought it's a nice, neat quote that I think fits the situation where the court said, we review for abusive discretion the district court's decision whether to abstain, and we exercise de novo review to the extent that the decision turns on interpretation of law. I think it's pretty straightforward in that respect. I wouldn't expect anything different than what we're dealing with here in this circuit. Okay. And if there's nothing further, I submit, and thank you very much. Thank you. Mr. Howard. I'd like to just address two or three points. First of all, with respect to the delegation issue, the current state of the law under the Supreme Court, and that was articulated in the Henry Schein case, is that when a contract delegates the question of arbitrability of a particular dispute to an arbitrator, a court may not override the contract even if it thinks the argument wholly groundless. That's the standard. And with respect to the state court's decision, the state court identified the issue of potential delegation. We did argue that all of the issues were for the arbitrator to the state court, and the state court simply did not adequately address and follow the Supreme Court's mandate in Henry Schein. And I assume you have made these arguments in your briefing in the Court of Appeal. We have, but I would strongly urge the court to consider this court's decision in WeCare and the Apton decision. We have cited cases where there were, in both those cases, decisions by the state court against the issue of arbitrability, in both of those cases. And in both of those cases, albeit WeCare was not a Colorado River case, but Apton takes WeCare and applies the abstention doctrine analysis to it. And clearly, under that analysis comes to the conclusion that given the strong policy favoring arbitration, the fact that the state court's decision is not raised judicata, doesn't matter if it's on appeal, it's not raised judicata, that the federal courts must intervene in those circumstances because the presence of federal law is a major consideration weighing against abstention. So that's exactly the situation that we have here, and that's why we urge that the court must act in this case. It's on all fours. Okay, thank you very much. May I just request one more point? One last. Because I did reserve time. Well, I know, but you've used up most of it. I do not, I simply do not accept that this case is parallel. I submit the court must look to the underlying merits, because otherwise we have no recourse on our contractual dispute under the SRA. We're out of court. I do think we over your point. Thank you very much, Mr. Howler. Thanks to both counsel. The court will take the case under advisement, and we will take about an eight-minute or so recess.